**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTIN MITTELMARK, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>MONRO, INC.,<br><br>                              Defendant. | Case No.:   1:18-cv-841 (TJM/CFH)<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**PUTATIVE CLASS ACTION** |

Plaintiff Martin Mittelmark brings this action, on behalf of himself and all others similarly situated, against Defendant Monro, Inc., and alleges as follows:

## INTRODUCTION

1.      This is a class action, brought under New York law, on behalf of proposed classes of consumers who purchased aftermarket replacement catalytic converters from Defendant.

2.      Federal law mandates that all new aftermarket replacement catalytic converters must be warranted to comply with federal emission performance standards for 25,000 miles after purchase and installation, and also must be accompanied by a 5-year, 50,000-mile warranty on the converter shell and end pipes.

3.      Similarly, New York state law mandates that all new aftermarket replacement catalytic converters must be warranted from <u>all</u> defects for a period of 5 years or 50,000 miles.

4.      Both federal and New York state law also require sellers and installers of new aftermarket replacement catalytic converters to complete and file a warranty card setting forth the terms of the applicable warranty, and to provide a copy of the warranty card to the customer at the time of the sale and installation.

5.      Despite these clear legal mandates, Defendant has a uniform policy of selling and installing new aftermarket replacement catalytic converters in New York and throughout the United States without adequately informing its customers of the applicable, legally-mandated warranties, and without completing or providing warranty cards to its customers as required by law.

6.      Worse, Defendant has a policy of falsely representing to its customers that the warranty on their new aftermarket replacement catalytic converters is only good for "the earlier of 90 days or 4,000 miles," and routinely refuses to replace converters that fail after this brief time frame even when such failures occur within the longer, legally-mandated warranty period.

7.      Because of Defendant's unlawful policies, Plaintiff and the classes have been compelled to pay money to repair or replace the aftermarket replacement catalytic converters purchased from and installed by Defendant, which were covered by warranty and should have been repaired or replaced for free.

8.      As alleged in greater detail herein, Defendant's sale and installation of aftermarket replacement catalytic converters without adequately disclosing the applicable, legally-mandated warranties to its customers, and its refusal to repair failed catalytic converters under warranty, constitute deceptive business practices in violation of New York General Business Law § 349, and further violate New York common law as set forth herein.

9.      Further, Defendant's misrepresentations to its customers that its aftermarket replacement catalytic converters are covered only by a shorter, limited warranty constitute a deceptive business practice as well as a false advertisement and misrepresentation in violation of New York General Business Law §§ 349 and 350, and further violate New York common law as set forth herein.

10.     This action seeks redress for Plaintiff and the classes in the form of compensatory damages, punitive damages, and injunctive relief, which would include, inter alia, an order directing Defendants to cease the challenged practices, including the sale and installation of aftermarket replacement catalytic converters without attaching and disclosing the applicable warranties as required by law, and to initiate a program to provide notice of Defendant's omissions and to correct prior misrepresentations regarding the applicable warranties, to repair or replace any failed catalytic converters, and to refund any monies expended by Plaintiff and the classes to repair or replace failed catalytic converters that were under warranty at the time of such repair or replacement.

## THE PARTIES

11.     Plaintiff Martin Mittelmark is an individual and citizen of New York.

12.     Like all class members, Plaintiff purchased an aftermarket replacement catalytic converter from Defendant, and paid Defendant to install the converter on his vehicle.  Defendant did not adequately inform Plaintiff that the converter was covered by a legally-mandated 5-year, 50,000-mile warranty, but rather told Plaintiff that the applicable warranty on the converter was only "the earlier of 90 days or 4,000 miles."  Moreover, Defendant refused to replace Plaintiff's converter under warranty when it failed within the 5-year, 50,000-mile warranty period.  As a result of Defendant's actions, omissions and affirmative misrepresentations, Plaintiff was forced to pay money to repair his catalytic converter even though it was still under warranty.

13.     Defendant Monro, Inc. is a New York corporation with its principal place of business located at 200 Holleder Parkway, Rochester, NY 14615.

14.     Defendant operates its Monro Muffler/Brake & Service automobile repair facilities out of its headquarters in Rochester, New York, which operation entails, inter alia, the

creation and implementation of the unlawful policies described herein. It is specifically alleged that Defendant created and implemented those policies from its headquarters in Rochester, New York.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability; and (iii) there is minimal diversity because at least one class member is a citizen of a state different from at least one Defendant.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 inasmuch as: (a) Plaintiff resides in this District; (b) many of the acts giving rise to this action occurred in this District, in that Plaintiff purchased his replacement catalytic converter in this District and Defendant refused to replace that converter under warranty in this District; (c) Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws of this District through the operation of repair facilities and the sale and installation of its products in this District; and (d) Defendant does substantial business in this District.

## CLASS ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a nationwide class defined as follows:

> **All persons in the United States who purchased an aftermarket replacement catalytic converter from Defendant, and had it installed on their vehicle by Defendant, and who, between July 13, 2012 and the present, paid money to repair or replace that catalytic converter: (a) for failure to comply with federal emission performance standards within 25,000 miles of such purchase and installation; or (b) for converter shell or end pipe failure within 5 years or 50,000 miles of such purchase and installation.**

19.     Additionally, or alternatively, Plaintiff seeks certification of the following New York subclass, defined as follows:

> **All New York citizens who purchased an aftermarket replacement catalytic converter from Defendant in New York on or after November 28, 2012, and had it installed on their vehicle by Defendant in New York, and who paid money to repair or replace that catalytic converter within 5 years or 50,000 miles of such purchase and installation.**

20.     Excluded from the class and subclass are Defendant, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

21.     Plaintiff reserves the right to amend or modify the proposed class definitions in connection with a motion for class certification or as warranted by discovery.

22.     This action has been brought and may properly be maintained on behalf of the classes proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

23.     The members of the class and subclass for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

24.     Upon information and belief, the proposed nationwide class is composed of over 10,000 persons, and the New York subclass is composed of at least 1,000 persons.  The exact number of class members in each proposed class may be ascertained from Defendant's books and records.

25.     No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendants.

26.     Rather, all claims in this matter arise from the uniform, unlawful policies of Defendant outlined in detail herein.

27.     There are common questions of law and fact affecting the rights of all class members, including the following:

a.   whether Defendant's actions and uniform policies alleged herein occurred;

b.   whether Defendant sold and installed aftermarket replacement catalytic converters without adequately disclosing or attaching the legally-mandated warranties;

c.   whether Defendant misrepresented that the applicable warranties on the catalytic converters it sold and installed were less than the actual warranties required by law and provided by the manufacturer;

d.   whether Defendant failed to complete and provide its customers with the appropriate warranty cards, as required by law;

e.   whether Defendant knew about the legally-mandated warranties when it sold and installed the aftermarket replacement catalytic converters;

f.   whether Defendant refused to repair aftermarket replacement catalytic converters under the legally-mandated warranties;

g.   whether notice of the legally-mandated warranties should be provided to class members;

h.   whether Plaintiff and the classes are entitled to injunctive relief in the form of an order establishing a Court-administered program to provide repair or replacement of failed catalytic converters under warranty, or refunds for repair or replacement costs incurred by Plaintiff and the class members;

i.   whether Defendant's conduct was a violation of New York General Business Law §§ 349 and 350;

j.   whether Defendant's conduct constituted a breach of the implied covenant of good faith and fair dealing;

k.   whether Defendant's conduct constituted a breach of warranty; and

l.   whether Defendant was unjustly enriched from its actions alleged herein.

28.     Each of these enumerated questions of law and fact is common to each member of the proposed classes.

29.     Plaintiff is a member of the classes he seeks to represent.

30.     The claims of Plaintiff are not only typical of all class and subclass members; they are identical.

31.     Plaintiff's claims arise from the same factual and legal bases as those of the other class members, and Plaintiff asserts the same legal theories as all class members.

32.     Plaintiff has no interest antagonistic to, or in conflict with, the class or subclass.

33.     Plaintiff will thoroughly and adequately protect the interests of the classes, having obtained qualified and competent legal counsel to represent himself and those similarly situated.

34.     Defendant has acted or refused to act on grounds generally applicable to the class and subclass, thereby making appropriate injunctive and declaratory relief for the classes as a whole.

35.     The prosecution of separate actions by individual class members would create a risk of inconsistent adjudications, would be economically wasteful, and would cause needless expenditure of judicial resources.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, inter alia, the actual damages suffered by each class member were less than $1,000 apiece and, as such, individual actions are not economically feasible.

38.     Common questions will predominate, and there will be no unusual manageability issues.

## FACTS GIVING RISE TO THE CAUSES OF ACTION

39.     Defendant owns and operates 1,140 Monro Muffler/Brake & Service automobile repair facilities in 27 states throughout the United States, including New York.

40.     One of the services that Defendant provides at its repair facilities is the sale and installation of aftermarket replacement catalytic converters.

41.     A catalytic converter is an exhaust emission control device that converts toxic gases and pollutants expelled through the exhausts of internal combustion engines into less-toxic pollutants like carbon dioxide and water.

42.      Since 1975, nearly every new gasoline-powered automobile has been factory-equipped with a catalytic converter to help facilitate compliance with federal emission performance standards established by the Environmental Protection Agency ("EPA").

43.      Section 203(a)(3) of the federal Clean Air Act ("CAA"), 42 U.S.C. § 7522(a)(3), prohibits automobile repair facilities from removing or tampering with any factory-installed emission control device, including catalytic converters.  The statute specifically requires that any repair shop that removes a catalytic converter from an automobile must replace it with a new "original equipment" or "OE" catalytic converter, in the same location, and identical to the one that was removed.  See 42 U.S.C. § 7522(a)(3).

44.     Replacing a factory-installed catalytic converter with a non-OE, "aftermarket" catalytic converter would be a violation of the CAA and would subject the seller and installer of such aftermarket converter to potentially significant monetary penalties under the CAA.  See id.

45.     Recognizing that strict adherence to this statutory requirement would be costly to consumers – e.g., the cost of an OE catalytic converter in 1986 was between $300 and $500 – the EPA published formal guidance in the form of an interim policy and proposed regulations, entitled "Sale and Use of Aftermarket Catalytic Converters," which permitted automobile repair facilities to replace factory-installed, OE catalytic converters with certain aftermarket catalytic converters.  See 51 Fed. Reg. 28114 (Aug. 5, 1986).

46.     To ensure that the aftermarket catalytic converters maintained the same emission performance standards as the OE converters, however, the EPA policy statement required, inter alia, that the aftermarket replacement converters be designed, manufactured, and warranted to "meet the [federal] emission reduction requirements … for 25,000 miles."  Id.

47.     The EPA guidance also required that aftermarket converter shell and end pipes be designed and warranted "to last for five (5) years or 50,000 miles (whichever comes first) from the date of installation."  Id.

48.     Further, the EPA guidance required each aftermarket replacement catalytic converter to be accompanied by a warranty card explaining the warranty and setting forth additional information, including the "vehicle owner's name and address, phone number, the make, model, year and mileage of the vehicle, the date of installation, the installing dealer's name and address and the part number(s) installed."  The warranty card was to be filled out by the installer, and a copy was to be given to the customer.  Id.

49.     Thereafter, the EPA reiterated and revised its interim policy regarding aftermarket replacement catalytic converters.  The revised policy statement, also entitled "Sale and Use of Aftermarket Catalytic Converters," provided that, beginning on January 1, 1988, the EPA would prosecute all automobile repair facilities that "install or otherwise sell any aftermarket catalytic

converter which is not as effective as the new OEM converter originally on the vehicle <u>or which</u> <u>has not met the criteria of the interim aftermarket converter policy [set forth in 51 Fed. Reg.</u> <u>28114]</u>…. <u>The installation of a noncomplying catalytic converter … will be considered a</u> <u>violation of the Clean Air Act, 203(a)(3)</u>." 52 Fed. Reg. 42144 (Nov. 3, 1987) (emphasis added).

50.     The EPA summarized its policy on aftermarket catalytic converters in a published guidance document entitled "Aftermarket Catalytic Converters:  Guide to Their Purchase, Installation, and Use," OPA 87-023, Jan. 1989.  In that guidance publication, the EPA stated:  "EPA's aftermarket-converter guidelines apply to people engaged in the business of automotive service and repair ….  Under the authority of Section 203(a)(3) of the Clean Air Act, all these persons have been prohibited from installing or selling aftermarket catalytic converters that have not met the criteria detailed in the EPA's 'Sale and Use of Aftermarket Catalytic Converters,' an interim enforcement policy published on August 5, 1986 [at 51 Fed. Reg. 28114]." <u>Id.</u>

51.     The EPA guidance document explained that, pursuant to EPA policy, "[n]ew aftermarket converters are required to have a five year, 50,000 mile warranty on the converter shell and end pipes.  They are also required to be warranted to meet EPA's emission performance standards for 25,000 miles…." <u>Id.</u>

52.     Stated otherwise, "[m]anufacturers of new converters are also required to provide a warranty on the converter shell and end pipes for five years or 50,000 miles, whichever comes first, and for 25,000 miles on converter emission performance." <u>Id.</u>

53.     The EPA policy document further explained that installers of aftermarket catalytic converters are required to "fill out the warranty information card supplied by the manufacturer and give it to the vehicle owner or operator." <u>Id.</u>

54.     The EPA policy and guidance stated herein was in effect throughout the class period, and currently remains in effect through the date of this filing.

55.     The state of New York has similar, albeit slightly more stringent, requirements for aftermarket replacement catalytic converters.

56.     Specifically, on November 28, 2012, the New York State Department of Environmental Conservation ("DEC") enacted new regulations that adopted the standards for aftermarket replacement catalytic converters previously implemented by the California Air Resources Board ("CARB").  See 6 N.Y.C.R.R. § 218-7.2(c)(1), adopting the aftermarket catalytic converter requirements set forth in 13 C.C.R. § 2222, which incorporates the requirements set forth in CARB's "California Evaluation Procedures for New Aftermarket Catalytic Converters,"[1] which specifies, inter alia, that new aftermarket catalytic converters must be warranted to be "free from any defects in materials or workmanship" both in emissions performance and structure (external shell and end pipes) "for 5 years or 50,000 miles from the date of installation, whichever comes first" and that a warranty card setting forth the warranty's terms and conditions and installation information be supplied to the customer at the time of purchase.

57.     Prior to implementing the CARB regulations, the DEC published a notice explaining the proposed changes:

> Part 218 is being revised to incorporate regulations for new aftermarket and used catalytic converters that are identical to those adopted by CARB.  This regulation prohibits the sale of used catalytic converters and requires more stringent emissions reduction performance and durability requirements for new aftermarket catalytic converters.  The new aftermarket catalytic converters are required to achieve exhaust emissions that comply with the emissions standards to which the vehicles were certified.  The durability

---

[1] Available online at:  https://www.arb.ca.gov/regact/2007/amcat07/approvalamcat.pdf (last visited July 10, 2018).

> requirement was extended from 25,000 miles to 50,000 miles and the
> catalytic converters must be warranted to be free from defect for five years.

2012 N.Y. Reg. Text 23323 (Aug. 1, 2012) (emphasis added).

58.     The notice further explained that the new regulations will "require the installer to complete a warranty card in triplicate with the original going to the customer, one copy to the installer, and one copy to the manufacturer of the converter." Id.

59.     Accordingly, since November 28, 2012, every aftermarket replacement catalytic converter sold and installed in New York has been required to be accompanied by a 5-year, 50,000-mile warranty. That warranty must be set forth in a warranty card filled out by the installer and provided to the customer at the time of purchase.

60.     Despite these federal and state requirements, Defendant has a policy of failing to adequately inform its customers of the applicable warranties on the aftermarket catalytic converters that it sells and installs, and moreover fails to provide them with the required warranty card.

61.     Worse, Defendant affirmatively misrepresents to its customers that the applicable warranty covering the aftermarket catalytic converters they purchase from and have installed by Defendant is far less than the warranties required by law (and actually provided by the manufacturer).

62.     What happened to Plaintiff helps illustrate Defendant's unlawful and deceptive practices described herein.

63.     On April 18, 2014, Plaintiff purchased a new aftermarket replacement catalytic converter for his 1999 Chevrolet S10 from Defendant's Monro Muffler/Brake & Service repair shop #3460318, located at 134 S. Broadway, Shop 280, Saratoga Springs, NY 12866. Defendant

removed Plaintiff's old, factory-installed catalytic converter and installed the new aftermarket converter on Plaintiff's car.  See Exhibit A, Monro Invoice dated 4/18/14.

64.     Plaintiff paid Defendant a total of $429.06 for the purchase and installation of the new aftermarket replacement catalytic converter, including $334.00 for the converter itself ($389.99 less a discount of $77.84, plus $21.85 in sales tax).  See id.

65.     At the time of the installation, Plaintiff's car had 98,051 miles.  See id.

66.     By operation of law, the aftermarket replacement catalytic converter purchased by Plaintiff, and installed on his car by Defendant, was required to – and did indeed – have a 5-year, 50,000 mile warranty.

67.     It is specifically alleged that the aftermarket replacement catalytic converter purchased by Plaintiff, and installed on his car by Defendant, was accompanied by the following warranties:  (a) the federally-mandated 25,000 mile warranty for compliance with federal emissions standards; (b) the federally-mandated 5-year/50,000-mile warranty on the converter shell and end pipes; and (c) the New York-mandated 5-year/50,000-mile warranty covering both emissions performance and structure (including shell and end pipes).

68.     Indeed, Defendant would have been prohibited by law from selling an aftermarket catalytic converter that was not accompanied by these warranties.  See, e.g., EPA's "Aftermarket Catalytic Converters:  Guide to Their Purchase, Installation, and Use" (providing that "people engaged in the business of automotive service and repair … have been prohibited from installing or selling aftermarket catalytic converters that have not met the criteria detailed in the EPA's 'Sale and Use of Aftermarket Catalytic Converters,'" which criteria includes the federally-mandated warranties described above).

69.     Despite this, Defendant failed to adequately inform Plaintiff of these warranties.

70.     Defendant also failed to provide Plaintiff with a warranty card explaining the applicable warranties, as required by federal and New York state law.

71.     In fact, the only conceivable reference to the legally-mandated warranties that was ever communicated to Plaintiff was the notation "60" under the "Warr" column on Plaintiff's invoice.  See id.

72.     This statement alone was insufficient to adequately convey the legally-mandated warranties to Plaintiff, particularly in light of the fact that Defendant's invoice also contained the following "NOTICE TO CONSUMERS":  "Unless otherwise specified in writing, all parts and labor are warranted for the earlier of 90 days or 4,000 miles."  See id. (emphasis added).

73.     Approximately 4 years and 2 months later, on June 12, 2018, Plaintiff returned to Defendant's Monro Muffler/Brake & Service repair shop #3460318, located at 134 S. Broadway, Shop 280, Saratoga Springs, NY 12866, because his 1999 Chevrolet S10 was making a loud noise from its exhaust.  See Exhibit B, Monro Estimate dated 6/12/18.

74.     At the time of his second visit, Plaintiff's car had 116,476 miles (i.e., 18,425 since his initial visit and catalytic converter replacement).  See id.

75.     Plaintiff was told that his car needed a new catalytic converter, and that the estimated cost of the necessary repair was $954.34, which amount included $631.26 for a new aftermarket replacement catalytic converter ($589.96 plus $41.30 in sales tax).  See id.

76.     Plaintiff was further told that his old catalytic converter could not be repaired because the end pipes had become too thin and deteriorated to weld.

77.     Defendant refused to replace Plaintiff's catalytic converter under warranty, even though the aftermarket converter that Plaintiff had previously purchased from Defendant on

14

April 18, 2014 was still covered under both the federal- and state-mandated manufacturer's warranties cited above.

78.    Indeed, Defendant had installed the aftermarket catalytic converter on Plaintiff's car just 4 years and 2 months prior, and Plaintiff's car had been driven only 18,425 miles since that installation.

79.    Thus, the old aftermarket replacement catalytic converter that Defendant had sold to Plaintiff and installed on his car was well within the time frames of all the warranties mandated by both federal and New York state law, and consequently should have been replaced by Defendant for free.

80.    But Defendant refused to do so, instead asserting that Plaintiff's old aftermarket converter was only covered by the 90-day, 4,000-mile warranty set forth on Plaintiff's initial invoice – which limited warranty had long-since expired – and attempted to charge Plaintiff upwards of $1,000 for a repair that should have been free.

81.    The following week, on June 19, 2018, Plaintiff was forced to spend $89.30 to hire another automobile repair facility to temporarily repair his catalytic converter by welding the converter end pipe.  See Exhibit C, Invoice dated 6/19/18.  Plaintiff has been told, however, that this repair is only temporary and likely will last about a year.

82.    In sum, Defendant sold, and installed on Plaintiff's car, an aftermarket catalytic converter that, according to federal and New York state law, is required to – and did in fact – have a 5-year, 50,000-mile warranty.

83.    Defendant failed to adequately inform Plaintiff of that warranty, however, and now has refused to honor it.

84.     Worse, Defendant misrepresented to Plaintiff that his converter is covered only by a lesser warranty that has already expired, and has sought to charge Plaintiff nearly $1,000 for a repair or replacement that should be performed for free.

85.     As a result of Defendant's actions, Plaintiff has been forced to spend nearly $100 on a temporary repair that may or may not last a year.

86.     If the repair fails after 10 months, then Plaintiff will have no option but to spend $1,000 on a new aftermarket catalytic converter, as his 5-year warranty will expire on April 18, 2019.

87.     Moreover, it is undisputed that Plaintiff needs a new catalytic converter, but Defendant has refused to replace his old one under warranty, and Plaintiff cannot get it replaced elsewhere because Defendant never gave him a warranty card at the time of his purchase and installation, as required by federal and New York state law.

88.     What happened to Plaintiff was not an accident or an isolated incident, nor are the events described herein limited to Plaintiff's interaction with Defendant.

89.      Rather, it was part of a uniform course of conduct by Defendant, in which Defendant sold and installed aftermarket replacement catalytic converters on thousands of automobiles in New York and throughout the United States, without adequately informing its customers of the applicable 5-year/50,000-mile warranties that were mandated by federal and New York state law and instead informing them that the converters were covered by a lesser warranty.

90.     Now, when the aftermarket converters it sold and installed are failing, Defendant is refusing to honor the mandated warranties, instead attempting to charge its customers nearly

$1,000 apiece to install a new converter, when the old converter remains under warranty and should be replaced for free.

91.    These customers are unable to get another repair facility to honor the warranty because, as with Plaintiff, Defendant did not provide them with a warranty card identifying, inter alia, the customer, product, mileage, and date of purchase, as required by law.

92.    Rather, Defendant's customers – Plaintiff and the class members – are and have been required to repair or replace their catalytic converters at their own expense.

93.    Plaintiff and the class members incurred these expenses as a direct result of Defendants' actions.  Indeed, but for Defendants' omissions and misrepresentations, Plaintiff and the class members would (and should) have their catalytic converters repaired or replaced under warranty for free.

94.    Defendant knew about the applicable warranties when it sold aftermarket replacement catalytic converters to Plaintiff and the class members, and when it installed the converters on their cars, but knowingly and intentionally failed to adequately inform them of the warranties – and misrepresented the terms of the warranties – for Defendant's own profit.

95.    Indeed, Defendant's website specifically provides that catalytic converters are covered by a "60 Months/50,000 Miles" "Manufacturer's warranty" for both parts and labor. See http://www.monro.com/warranty-statement (last visited July 10, 2018).  Yet Defendant has failed to adequately convey this warranty information to its customers, and moreover has failed to comply with the warranty terms for its own profit.

96.    Plaintiff and the class members did not discover, nor could they have discovered through reasonable diligence, that Defendant was omitting and misrepresenting the legally-mandated warranties on catalytic converters until shortly before this litigation was initially

commenced, because Defendant used methods to avoid detection and to conceal their violations of the law, including by failing to provide its customers with warranty cards and by misrepresenting the terms of the warranty.

97.     At bottom, Defendant knowingly and intentionally (a) omitted the terms of the mandatory warranties on the aftermarket replacement catalytic converters it sold and installed on the cars of Plaintiff and the class members; (b) misrepresented the terms of the applicable warranties; (c) failed to provide Plaintiff and the class members with a warranty card, as required by law, which would permit Plaintiff and the class members to seek replacement under warranty from another repair facility; and (d) refused to honor the mandated warranties when Plaintiff and the class members sought repair or replacement within the covered time frames.

98.     Defendant's conduct described herein constitutes a false advertisement and material misrepresentation, an omission of material fact, and a deceptive business practice in violation of the New York General Business Law §§ 349 and 350, and further violates New York common law.  Plaintiff and the class members suffered damages as a proximate result of Defendant's actions.

## COUNT I

## BREACH OF WARRANTY

## On Behalf of the Nationwide Class

99.     Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

100.     Defendant sold aftermarket replacement catalytic converters in its regular course of business.  Plaintiff and the class members purchased aftermarket replacement catalytic converters from Defendant, and paid Defendant to install the converters on their automobiles.

101.    By operation of federal and New York state law, the manufacturers of the replacement catalytic converters sold and installed by Defendant to Plaintiff and the class were required to – and did in fact – attach certain warranties to the converters, as described herein.

102.    Defendant, as the seller and installer of aftermarket catalytic converters, was aware of these warranties and had a duty to adequately convey the warranties to Plaintiff and the class, but failed to do so.

103.    Worse, Defendant misrepresented the applicable warranties to Plaintiff and the class, falsely informing Plaintiff and the class that a lesser warranty applied to their purchases.

104.    Defendant further failed to provide Plaintiff and the class with a warranty card as required by law.

105.    Defendant has breached the legally-mandated manufacturer warranties by refusing to repair or replace the failed catalytic converters on the automobiles of Plaintiff and the class, instead attempting to charge Plaintiff and the class nearly $1,000 apiece to perform work that is clearly covered by the warranties and should be performed for free.

106.    All conditions precedent to seeking liability under this claim for breach of warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the goods and services at issue.  Defendant had actual and/or constructive notice of the applicability of the legally-mandated warranties but to date have taken no action to remedy their breaches or to repair or replace the failed converters they installed on the automobiles of Plaintiff and the class.

107.    Defendant's breach of warranty has caused Plaintiff and the class to suffer injuries, in that they were forced to pay for the repair or replacement of their failed catalytic converters, which should have been covered under warranty at no cost to Plaintiff and the class.

108.    As a result of Defendant's breach of warranty, Plaintiff and the class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate.

## COUNT II

### BREACH OF IMPLIED CONTRACT THROUGH VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

#### On Behalf of the Nationwide Class

109.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

110.    By operation of law, there existed an implied contract for the sale of aftermarket replacement catalytic converters between Defendant and Plaintiff and each class member.

111.    By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

112.    By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and Plaintiff and each class member.

113.    Specifically, Defendant: (a) omitted or obscured the terms of the warranties required by federal and New York state law, and provided by the manufacturer(s), on the aftermarket replacement catalytic converters it sold and installed on the cars of Plaintiff and the class; (b) misrepresented those warranties by informing Plaintiff and the class that the applicable warranties were far less than those required by law and actually provided by the manufacturer(s); (c) failed to provide Plaintiff and the class with a warranty card, as required by law, which has prevented Plaintiff and the class from obtaining replacement converters under warranty from other repair facilities; and (d) refused to honor the mandated warranties when Plaintiff and the

class sought repair or replacement from Defendant within the covered time frames, despite having knowledge of their existence.

114.    As a result of these breaches, Plaintiff and each class member has suffered damages as described herein.

## COUNT III

## DECLARATORY AND INJUNCTIVE RELIEF

## On Behalf of the Nationwide Class

115.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

116.    Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole within the meaning of Federal Rule of Civil Procedure 23(b)(2).

117.    Plaintiff and the class are in need of a program to provide Defendant's customers with notice of the actual, legally-mandated warranties provided by the manufacturers covering the catalytic converters they purchased from and had installed by Defendant, to correct Defendant's omissions and misrepresentations regarding the applicable warranties.

118.    Plaintiff and the class are also in need of a program to repair or replace any failed catalytic converters that remain under warranty at no cost to the class member, and/or to provide refunds to any class members who paid their own money to repair or replace a failed aftermarket catalytic converter purchased from and installed by Defendant that should have been repaired or replaced under warranty for free.

119.    Plaintiff and the class members should not be required to bear the cost of repairing or replacing their failed catalytic converters when such converters are covered under warranty.

120.     Requiring and relying on individual class members to make such repairs or replacement would be less efficient and more costly than a standardized program to institute such repairs or replacement on a class-wide basis, under Court supervision.

121.    Accordingly, Plaintiff, on behalf of himself and the class members, seeks a court order for declarative and injunctive relief:

    a.  Declaring that the aftermarket replacement catalytic converters sold and installed by Defendant are covered by the applicable warranties provided by the manufacturer(s) and mandated by federal and state law;

    b.  Declaring that Defendant knew or should have known of the applicable warranties at the time of sale and installation, should have properly provided them to Plaintiff and the class along with a completed warranty card, and should not have misrepresented the applicable warranties;

    c.  Enjoining Defendant from selling and installing aftermarket catalytic converters without adequately informing customers of the legally-mandated manufacturers' warranties, and from misrepresenting the applicable warranties to its customers;

    d.  Directing Defendant to provide completed warranty cards to customers upon all future sales of aftermarket catalytic converters;

    e.  Directing Defendant to institute a court-administered corrective notice campaign to provide notice to all customers who purchased aftermarket catalytic converters from Defendant, advising them of the applicable, legally-mandated warranties actually provided by the manufacturer; and

    f.  Directing Defendant to institute a court-administered campaign to repair or replace any failed aftermarket catalytic converter that remains under warranty, and to provide refunds to any class member who paid money to repair or replace a failed catalytic converter that should have been repaired or replaced under warranty.

## COUNT IV

## QUASI-CONTRACT/DISGORGEMENT/ RESTITUTION

## On Behalf of the Nationwide Class

111.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

112.    This claim is alleged in the alternative to Plaintiff's claims for money damages.

113.    Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing aftermarket catalytic converters from Defendant and paying Defendant to install those converters on their automobiles.  Defendant has knowingly and willingly accepted and enjoyed these benefits.

114.    The retention of these benefits by Defendant would be unjust because, inter alia, by omitting, obscuring, and misrepresenting the applicable warranties, Defendant failed to convey the full value of the catalytic converters purchased by Plaintiff and the class, and caused Plaintiff and the class to unnecessarily spend money out of their own pockets to repair or replace failed catalytic converters that were covered by warranty.

115.    Moreover, to the extent Defendant accepted money from Plaintiff and the class to repair or replace catalytic converters that were covered under warranty, Defendant was unjustly enriched by those payments.

116.    Equity demands disgorgement of Defendant's ill-gotten gains.  Defendant will be unjustly enriched unless Defendant is ordered to disgorge those profits for the benefit of Plaintiff and the class members.

117.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the class members are entitled to restitution from Defendant and

institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

## COUNT V

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

## On Behalf of the New York Subclass

117.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

118.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

119.    In its sale of automobile parts and repair services throughout the State of New York, Defendant conducts business and trade within the meaning of New York General Business Law § 349.

120.    Plaintiff and the members of the New York subclass are consumers who purchased products and services from Defendant for their personal use.

121.    Defendant has engaged in deceptive and misleading practices, which include, without limitation, (a) omitting or obscuring the terms of the warranties required by federal and New York state law, and provided by the manufacturer(s), on the aftermarket replacement catalytic converters it sold and installed on the cars of Plaintiff and the class; (b) misrepresenting the terms of those warranties by informing Plaintiff and the class that the applicable warranties covering their converters were less than those actually provided by the manufacturer and required by law; (c) failing to provide Plaintiff and the class with a warranty card, as required by law, which has prevented Plaintiff and the class from obtaining replacement of their converters under warranty from other repair facilities; and (d) refusing to honor the mandated warranties

provided by the manufacturer when Plaintiff and the class sought repair or replacement within the covered time frames, despite having knowledge of their existence.

122.    Defendant knowingly and willfully committed these deceptive acts and practices, for its own profit.

123.    As a result of Defendant's actions, Plaintiff and the New York subclass were forced to spend their own money to repair or replace their failed catalytic converters that were in fact covered under the applicable warranties, and should have been repaired or replaced for free.

124.    By reason of this conduct, Defendant has engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

125.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the members of the New York subclass have sustained.

126.    As a result of Defendant's actions and violations, Plaintiff and the members of the New York subclass have suffered damages and are entitled to recover those damages as well as treble damages and reasonable attorney's fees from Defendant.

## COUNT VI

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

#### On Behalf of the New York Subclass

127.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

128.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

129.    Pursuant to the statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

130.    Defendant's advertising and representations that the aftermarket catalytic converters it sold and installed on the automobiles of Plaintiff and the New York subclass had only a 90-day, 4,000-mile warranty were false and misleading because the converters were in fact covered by a legally-mandated 5-year, 50,000-mile warranty that was provided by the manufacturer.

131.    Defendant has therefore directly violated New York General Business Law § 350.

132.    Defendant knowingly and willfully made these false advertisements and misrepresentations, for its own profit.

133.    Plaintiff and the New York subclass relied upon Defendant's false representations, having paid money to repair or replace their failed catalytic converters that were in fact covered by warranty, based on Defendant's misrepresentations.

134.    Plaintiff and the New York subclass would not have paid such money but for Defendant's misrepresentations; thus, Defendant's misrepresentations were the actual and proximate cause of monetary damage to Plaintiff and the New York subclass.

135.    As a result of Defendant's actions and violations, Plaintiff and the members of the New York subclass have suffered damages and are therefore entitled to recover those damages as well as treble damages and reasonable attorney's fees from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to:

a.  Certify the proposed nationwide class and the New York subclass as class actions pursuant to Federal Rule of Civil Procedure 23;

b.  Appoint Plaintiff as representative of the class and subclass;

c.  Appoint interim lead counsel as co-lead counsel for the class and subclass;

d.  Enter an order for injunctive and declaratory relief as described herein;

e.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein and/or restitution, to include interest and pre-judgment interest;

d.  Award Plaintiff and the classes treble and punitive damages;

e.  Award Plaintiff reasonable attorneys' fees and costs; and

f.  Grant such other and further legal and equitable relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  July 17, 2018                 **DeNITTIS OSEFCHEN PRINCE, P.C.**

                            By:

                            Ross H. Schmierer, Esq. (RS 7215)
                            315 Madison Avenue, 3rd Floor
                            New York, New York 10017
                            (T): (646) 979-3642
                            rschmierer@denittislaw.com

                            *Attorneys for Plaintiff*

27

# Exhibit A



**REPAIR SHOP#3460318**
**134 S. BROADWAY**
**SHOP 280**
**SARATOGA SPRING,NY   12866**
**(518)584-3887**

PAGE   1

| Customer ID: | 0280073253 | | Year: | 99 | | Date/Time: | 04/18/14  17:10:49 |
|---|---|---|---|---|---|---|---|
| Name: | MARTIN MITTELMARK | | Make: | CHEVROLET | | Estimate #: | 293553 |
| Address: | REDACTED | | Model: | S10 | | Invoice #: | 191641 |
| Address 2: | REDACTED | | Lic No: | ELJ1240 | | Key Tag: | |
| City,State,Zip/Postal Code: | REDACTED | | VIN: | | | PO Number: | |
| Home Phone: | REDACTED | | Color: | | | Email Address: | REDACTED |
| Work Phone: | REDACTED | | Engine: | 2.2 | | Fleet/Wholesale: | N |
| Other Phone: | () - | | Mileage In: | 98051 | | Unit Number: | |
| Tax Exempt #: | | | | | | Est Created On: | 04/18/14  12:46:36 |
| Manager: DON DURKIN | | | Mileage Out: 98051 | | | | |
| Services Requested: | | | | | | | |
|   LOUD EX | | | | | | | |

### Sales Status

| Qty. Part # | Code | Description | Loc Warr | List | Net | Labor | Amount |
|---|---|---|---|---|---|---|---|
| Tire Inflation: Not Available | | Torque: Not Available | | | | | |
| EXHAUST | | | | | | | |
| 1  OUTEX | S | CONVERTER | 60 | 389.99 | 389.99 | 111.00 | 500.99 |
| | | JOB DISCOUNT: | | | (77.84) | (22.16) | (100.00) |
| | | TOTAL EXHAUST: | 400.99 | | | | |

*** Customer Wishes To Discard Old Parts ***

**NOTICE TO CUSTOMERS**

Unless otherwise specified, all labor charges are preset or based on flat rate manuals, and not actual time spent. Unless otherwise specified in writing, all parts and labor are warranted for the earlier of 90 days or 4,000 miles. Please see reverse for details. All labor performed and parts replaced were necessary to perform all repairs. All parts are new unless otherwise specified (i.e. used or Repair). All personal items should be removed from the vehicle before it is left for service. We are not responsible for those items.

I certify that this vehicle has been tested or test driven when needed and that the mechanic's work was performed satisfactorily.

_____
Manager's Initials

PAY TYPE: VISA 429.06 Date: 4/18/2014 APPROVAL #: REDACTED ENTRY:
CREDIT CARD #:  XXXX-XXXX-XXXX-REDACTED

The undersigned acknowledges that this invoice is for services rendered by Monro Muffler Brake & Service and now tenders payment (either in cash, check, credit card or other charge) in the full amount set forth on this invoice. The undersigned agrees to pay any and all costs of collection incurred by Monro Muffler Brake & Service, including reasonable attorney fees and returned check charges, in the event that, for any reason, payment is not received by Monro Muffler Brake & Service. An expressed mechanic's lien is acknowledged on the above vehicle to secure the cost of repairs made, including any parts utilized during such repair.

_____
Print Name

_____
Customer Signature

**CAUTION:** Owners of Mag, Custom, Alloy, or Dual wheels must have lug-nuts retorqued after 25 miles or 24 hours! The Company will gladly retorque these lug-nuts once after the first 25 miles at no charge.

Initial:_____

See reverse for Diagnosis (REC), Warranty (WARR), and Location (LOC) codes.

---

THIS IS A HISTORY REPRINT. NOT AN INVOICE! DO NOT MAKE ANY PAYMENT FROM THIS PAPERWORK!  (Reprinted: 06/12/18  13:10:18)

| PAY | AMT | | | |
|---|---|---|---|---|
| VISA | 429.06 4/18/2014 | | SUB TOTAL | 400.99 |
| | | | SALES TAX | 28.07 |
| | | | GRAND TOTAL | 429.06 |

PAYMENT COLLECTED BY: D. DURKIN
TECH: 041294-0.00   J. SADLON

1
THANK YOU FOR CHOOSING
MONRO MUFFLER BRAKE & SERV
MANAGER
ANY PROBLEMS PLEASE CALL
MARKET MANAGER AT
1-800-876-6676 Ext. 104

**CUSTOMER COPY**

# Exhibit B



**REPAIR SHOP#3460318**
**134 S. BROADWAY**                                    PAGE  1
**SHOP 280**
**SARATOGA SPRING,NY  12866**
**(518)584-3887**

| | | | | |
|---|---|---|---|---|
| tomer ID: 0280073253 | | Year: | 99 | Date/Time: | 06/12/18 13:26:11 |
| ne: | **MARTIN MITTELMARK** | Make: | CHEVROLET | Estimate #: | 411823 |
| ress: | REDACTED | Model: | S10 | Invoice #: | |
| ress 2: | REDACTED | Lic No: | ELJ1240 | Key Tag: | |
| ,State.Zip/Postal Code: REDACTED | | VIN: | 1GCCS194@X | PO Number: | |
| ne Phone: REDACTED | | Color: | | Email Address: | REDACTED |
| k Phone: REDACTED | | Engine: | 2.2L GAS OHV (V | Fleet/Wholesale: | N |
| er Phone: () - | | Mileage In: | 116476 | Unit Number: | |
| Exempt #: | | | | Est Created On: | 06/12/18 13:03:27 |
| ager: FRANCIS GUILDER | | Mileage Out: 116476 | | | |
| vices Requested: | | | | | |
| CHECK EXHAUST | | | | | |

| Part # | Sales Status Code | Description | Loc | Warr | List | Net | Labor | Amount |
|---|---|---|---|---|---|---|---|---|
| Inflation: Not Available | | Torque: Not Available | | | | | | |
| HAUST | | | | | | | | |
| OUTG | S | EXH GASKET | | 40 | 15.00 | 15.00 | 0.00 | 15.00 |
| OUTG1 | S | EXH GASKET | | 40 | 16.00 | 16.00 | 0.00 | 16.00 |
| OUTEX | S | CONVERTER ASY | | 60 | 589.96 | 589.96 | 115.00 | 704.96 |
| 9 | S | EXHAUST HARDWARE | | 60 | 5.95 | 5.95 | 0.00 | 5.95 |
| | | TOTAL EXHAUST: | | | 741.91 | | | |
| RVICE | | | | | | | | |
| OUTSE | S | O2 SENSOR | | 60 | 150.00 | 150.00 | 0.00 | 150.00 |
| | | TOTAL SERVICE: | | | 150.00 | | | |

Customer Wishes To Discard Old Parts ***

*This is an Estimate only.*
*This is not a final Invoice.*
*A final Invoice is required*
*for all warranties.*

Customer Signature

SEE  REVERSE  SIDE  FOR  DIAGNOSIS  (REC),
WARRANTY (WARR), AND LOCATION (LOC) CODES
AND IMPORTANT AUTHORIZATION INFORMATION

CAUTION: Owners of Mag, Custom,
Alloy, or Dual wheels must have lug-
nuts retorqued after 25 miles or 24
hours!  The  Company  will  gladly
retorque these lug-nuts once after
the first 25 miles at no charge.

Initial:_____

IF YOU DO NOT RECEIVE AN INVOICE AFTER WORK IS COMPLETED AND FINAL PAYMENT, PLEASE CALL 888-291-5848 x 3500.

| | |
|---|---|
| SUB TOTAL | 891.91 |
| SALES TAX | 62.43 |
| GRAND TOTAL | 954.34 |

CH: 067223 P. HAPPLE

**CUSTOMER COPY**

# Exhibit C

Printer Friendly View

Million Mile Muffler
P.O. Box 415
Manchester CTR. VT , 05255
1-802-362-2480

**Date:** 06/19/2018 12:26:07

**Customer:** Mark

Home:
Mobile:
Work:
Email:

**For:** 1999 Chevrolet S10 Pickup 2.2L Eng VIN 4

| TYPE | DESCRIPTION | PART # | QTY | PRICE | RATE | HOURS | LINE TOTAL |
|------|-------------|--------|-----|-------|------|-------|------------|
| Labor | Labor/welding | - | - | - | $70.00 | 1.2 | $84.00 |
| Parts | Expipe | | 1.0 | $4.95 | - | - | $4.95 |

| | |
|---|---|
| Labor: | $84.00 |
| Parts: | $4.95 |
| Labor Taxes: | $0.00 |
| Parts Taxes: | $0.35 |
| **TOTAL:** | **$89.30** |

**Customer Signature:** _____